# IN THE COURT OF APPEALS OF IOWA

————————————

No. 25-1859
Filed February 11, 2026

————————————

**In the Interest of M.J., Minor Child,**

**J.P., Father,**
Appellant.

————————————

Appeal from the Iowa District Court for Mahaska County,
The Honorable Patrick McAvan, Judge.

————————————

**AFFIRMED**

————————————

Rebecca L. Petig of Bierman & Petig, P.C., Grinnell,
attorney for appellant father.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant
Attorney General, attorneys for appellee State.

Denise Gonyea of McKelvie Law Office, Grinnell,
guardian ad litem for minor child.

Dusty Clements of Clements Law & Mediation, LLC, Newton,
attorney for minor child.

————————————

Considered without oral argument
by Badding, P.J., and Buller and Langholz, JJ.
Opinion by Badding, P.J.

**BADDING, Presiding Judge.**

A father appeals the termination of his parental rights to his twelve-year-old son under Iowa Code section 232.116(1)(f) (2025). With unresolved substance-use, mental-health, and criminal issues hanging over his head, the father does not challenge the statutory ground for termination. He instead claims that termination is not in the child's best interests because of their close bond. Despite that loving relationship, we affirm the juvenile court's ruling on our de novo review of the record. *See In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022).

As the child's guardian ad litem stated at the termination hearing, this child "has been dealt a pretty rough hand for such a young person." His mother passed away in a car accident in 2020. The next year, the child was removed from his father's custody because of the father's drug use and mental health. In that child-in-need-of-assistance proceeding, the father quickly engaged in services and achieved sobriety. The child was returned to his custody in January 2022. But less than three years later—in May 2024—the Iowa Department of Health and Human Services received a report that the father was using methamphetamine again and failing to ensure the child had enough to eat.

This time around, the father refused to cooperate with the department. As a result, the child was removed from his custody and placed with a maternal aunt. Although he failed to complete substance-use or mental-health evaluations, the father consistently exercised visits with the child. The providers supervising the visits observed positive interactions between the father and son: they talked, played with Legos and Pokémon cards, and built a Halloween costume together. But there were occasional concerns with the father's mental health during the visits. At one, the father

2

"was pretty upset, said he was going to take off with [the child], leave the state, and then he kind of threw a chair over." Providers also saw behavioral signs that the father was under the influence. He "completely fell asleep" during one visit. At others, he was erratic and verbally aggressive with the providers. And while this case was pending, the father was arrested for possession of methamphetamine with intent to deliver, among other charges.

After the State petitioned to terminate his parental rights in June 2025, the father finally obtained a substance-use evaluation, which recommended inpatient treatment. The father intended to participate in that treatment after resolving some insurance issues. But he had not yet done so by the termination hearing in September.

Meanwhile, the child was thriving. When he was removed from the father's custody, the child was "physically thin, pale, lethargic," and struggling at school. By the end of that school year, he was excelling. Things improved even more for the child when he changed placements and moved into the home of fictive kin. The case manager for the department testified that she "didn't recognize [the child], the way he looked. He just appeared happy."

Despite that happiness, the child wanted to return to his father's custody. But his guardian ad litem reported that the child was "protective of his father and view[ed] him in a light that overlook[ed] his father's negative issues and parenting deficits." At the same time, the child reported feeling safe and stable with his current placement, who was in this process of getting her foster care license. Knowing the love between the child and his father, she was committed to ensuring that they continued to have contact.

3

After considering these facts, the juvenile court found that terminating the father's parental rights was in the child's best interests. The court explained:

> [The] father has not accepted services or acted consistently to correct the issues presented to allow for reunification to safely occur. This is particularly discouraging considering [the father] successfully navigated the child welfare system less than four years ago. He was actively involved in mental health treatment, demonstrated stability for himself and his child, and was safely reunified with the child. This time, [he] was unable to apply the knowledge and skills he learned in the previous case to guide his decisions and again achieve reunification. [The child] has waited long enough for his father to place himself in a position to be a permanent caretaker—it is time for the child to achieve the permanency he deserves.

The father contests these findings, arguing that he "is very bonded with his son and the two are very close." He emphasizes that he "had frequent contact with [the child] throughout this case" and that the child "expressed clear interest and desire to reunify with his father rather than have his parental rights be terminated." Although the father makes this argument under a best-interest issue heading, the only legal authority he cites in support of it is the permissive parent-child bond exception in Iowa Code section 232.116(3)(c). These are separate (but often conflated) steps in our three-part termination framework, which considers whether (1) a statutory ground for termination has been satisfied, (2) termination is in the child's best interests, and (3) any permissive exceptions to termination should be applied. *L.B.*, 970 N.W.2d at 313; *see also* Iowa Code § 232.116(1)–(3).

As we reminded litigants in *In re L.A.*, "if a party intends to advance both a best-interests and permissive-exception argument, the party needs a separate issue heading and argument for each" to avoid the risk of waiving an issue. 20 N.W.3d 529, 534 n.2 (Iowa Ct. App. 2025) (citing Iowa R. App. P. 6.903(2)(a)(3), (2)(a)(8)). Here, the father makes no argument about how

4

he satisfied his burden to prove the permissive exception under section 232.116(3)(c).[1]  Because his sole challenge goes to the child's best interests, we focus on that issue.

Our best-interest analysis requires us to "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child."  Iowa Code § 232.116(2).  With those considerations in mind, the juvenile court found:

> The child cannot be safely returned to his father, now or in the foreseeable future.  The record clearly shows that [the child] has grown academically, physically, and emotionally since removal allowed him to have stable, sober caretakers.  [The father] is unable to provide [the child] the permanency he needs and deserves.

We agree.  The defining elements in the best-interest analysis are the child's safety and need for a permanent home.  *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).  The father could provide neither for the child.  And unfortunately, "love is not enough."  *In re C.S.*, No. 25-0520, 2025 WL 1706556, at *2 (Iowa Ct. App. June 18, 2025).  Given that sad reality, we affirm the juvenile court's ruling terminating the father's parental rights.

**AFFIRMED.**

---

[1] This provision requires the parent resisting termination to prove by "clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship."  Iowa Code § 232.116(3)(c); *see In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018) (placing the burden to prove a permissive exception to termination on the parent resisting termination).  Even if the father had properly raised this issue for our review, we would affirm the juvenile court's determination that it did not apply.